IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| METROPOLITAN LIFE INSURANCE | ) | |
|---|---|---|
| COMPANY, | ) | |
| Plaintiff, | ) | 2:07-cv-1503 |
| v. | ) | |
| | ) | |
| MARY LYNN DOUGLAS, GERARD | ) | |
| DUVALL, DAVID DUVALL and | ) | |
| AMANDA DUVALL, | ) | |
| Defendants. | ) | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER OF COURT**

This is an interpleader action involving competing claims as beneficiary(ies) to the proceeds of a group life insurance policy issued by Metropolitan Life Insurance Company ("MetLife") to James D. DuVall ("DuVall") through his employer, FirstEnergy Group. The competing claimants are Mr. DuVall's natural children, Gerard, David and Amanda DuVall and his alleged fiance, Mary Lynn Douglas. The Court conducted a non-jury trial on July 15, 2008. Based on the evidence presented during the trial and the applicable law, the Court enters the following findings of fact and conclusions of law in accordance with Fed. R. Civ. P. 52.

Findings of Fact

Background

1. DuVall was married to Linda Ann DuVall, now Linda Daube, for twenty-six years, during which they had three children, Gerard (born 9/29/83), David (born 1/18/87) and Amanda (born 11/11/89). James filed for divorce in March 2006 and left the marital domicile in May 2006. The divorce became final in October 2006. As part of the divorce settlement agreement, Linda relinquished all of her rights in and to DuVall's employment-related savings, retirement

and death benefits.

2. DuVall apparently began dating Mary Lynn Douglas, a co-worker, in the summer of 2006. In October 2006, DuVall became ill and began to miss work. Around Thanksgiving, DuVall was diagnosed with cancer and spent two weeks in the hospital. After his hospitalization, DuVall moved in and resided with Douglas in her home until immediately prior to his death on February 5, 2007. Following his hospital stay, DuVall was on disability and never returned to work. Douglas testified that she and DuVall had agreed to get married after DuVall recovered, but DuVall never actually gave her an engagement ring.

3. DuVall was a long-time employee of Duquesne Light Company, but in 2000 the business was sold to FirstEnergy Group and DuVall coninued as an employee of FirstEnergy. DuVall had numerous benefits associated with his employment, including but not limited to medical insurance benefits, a 401(k) savings plan, a retirement pension benefit and life insurance.

4. Pursuant to the terms of the union collective bargaining agreement, DuVall participated in an employer-sponsored group life insurance policy issued by MetLife. The face amount of the policy death benefit is $64,000 plus interest.

Beneficiary Designation Forms

5. On June 6, 2006, DuVall executed a MetLife Beneficiary Designation form, which named his children as primary beneficiaries (Gerard - 34%, David and Amanda - 33% each) and named his brother, Ralph, and his mother, Sarah, as contingent beneficiaries (50% apiece) on the referenced group life insurance policy. This beneficiary designation was on file at Met Life and/or FirstEnergy at the time of DuVall's death. The validity of this document has not been contested.

6. Glen Camp, a co-worker of DuVall since 1982, testified that he had served as an employee benefits representative for the electrical workers Local Union 29 since 1987, and was a liaison for union members with FirstEnergy on issues regarding employee benefits. In that role, Camp met privately with DuVall at DuVall's request on December 20, 2006 in order to review DuVall's employee benefits entitlement, provide him with requested change of beneficiary designation forms and answer any questions he may have regarding employment-related benefits.

7. At the meeting, Camp learned that DuVall was divorced and living with Douglas and that DuVall wanted to have Douglas named as his primary beneficiary of all of his employment-related benefits. Camp advised DuVall that since he was divorced, he was free to leave his benefits to whomever he may choose. Camp provided change of beneficiary designation forms to DuVall for his Met Life group life insurance policy, 401(k) savings plan and retirement pension benefit and he instructed DuVall how to complete the forms.

8. Following the December meeting, Camp spoke to DuVall a number of times by phone to answer his questions regarding benefits. Sometime in January 2007, DuVall told Camp that he had changed all of his beneficiary designations to Douglas.

9. A MetLife Beneficiary Designation form, dated January 11, 2007 (the "January 11 Designation"), named Douglas as the sole primary beneficiary on DuVall's group life insurance policy. The form also designated Ralph DuVall as a 50% contingent beneficiary, with the children named as 50% contingent beneficiaries (Gerard and Amanda - 16.67% each, David- 16.66%). This beneficiary designation form, along with others for the savings plan and retirement pension benefits were purportedly signed by DuVall and were personally delivered by Douglas to April in the Human Resources department at FirstEnergy on January 12, 2007. By

3

correspondence of January 29, 2007, MetLife rejected this beneficiary designation for the asserted reason that the second page, which was necessary in order to include the name of the fourth contingent beneficiary (Amanda DuVall), did not have DuVall's signature on it.

10. It is undisputed that Douglas actually wrote/completed all of the printed portions of the January 11 Designation. Douglas testified that she and DuVall discussed the beneficiary designation forms while he was lying on a day-bed in her home and that she completed the January 11 Designation along with several other benefits forms on a clipboard.[1] Douglas testified that she printed the information on the forms as DuVall told her, and then DuVall physically signed and dated each of the forms in her presence. Douglas took the forms to work the next day and gave them to April in FirstEnergy's Human Resources department for processing.

11. Douglas testified that on January 11, 2007, DuVall was weak, but not bed-ridden, and that he was taking oxycontin and percoset to manage his back pain. DuVall could use his hands and she did not observe any tremors when he signed the forms.

12. Douglas testified that she learned of Met Life's rejection of the January 11 Designation form on the day of DuVall's funeral. It is not known by the Court whether or not DuVall had actual knowledge prior to his death on February 5, 2007 that Met Life had rejected the change of life insurance beneficiary designation form dated January 11, 2007. No communication was received by Met Life in response to its rejection letter of January 29, 2007

---

[1]Douglas is receiving the benefits resulting from her designation as the primary beneficiary on the FirstEnergy savings plan and pre-retirement election forms dated the same day and purportedly signed by DuVall. On January 12, 2007, a co-worker of Douglas notarized the pre-retirement election form, although DuVall did not sign that form in the presence of the notary.

prior to DuVall's death.

13. The DuVall children vigorously contest the genuineness and validity of the signature purporting to be that of DuVall on page one of the beneficiary designation form dated January 11, 2007. DuVall's 24-year-old son, Gerard, testified that the signature on the January 11 Designation was not his father's signature, based on his having lived with his father for eighteen years and having periodically received five or six checks from his father over the past six years.

14. Linda Daube, DuVall's former wife, likewise testified that the signature on the January 11 Designation was not DuVall's based on her familiarity with her husband's signature through their extensive financial dealings and co-ownership of property over the course of their 26-year marriage.

15. Faced with these two competing beneficiary claimants (DuVall children and Douglas) for the proceeds of DuVall's group life insurance policy proceeds, Met Life filed this interpleader action. After deducting allowable fees and costs, on February 18, 2008 MetLife paid $63,627.75 into the court, which the clerk has deposited into an interest bearing account in accordance with Fed. R. Civ. P. 67.

Handwriting Analysis

16. The key issues in this case are two: whether the life insurance beneficiary designation form dated January 11, 2007 allegedly submitted on behalf of DuVall to his employer, which was rejected by Met Life for failure to have been signed by DuVall on page 2 of the contingent beneficiary designation form, was nevertheless in "substantial compliance" with the Met Life and/or ERISA beneficiary designation requirements; and whether that particular insurance

beneficiary designation form was indeed signed by DuVall himself. In order to determine whether the January 11 Designation submitted to the employer substantially complied with the Met Life and/or ERISA beneficiary designation requirements, it must first be determined whether it has been established by the evidence that said beneficiary designation form reflects the actual signature of the decedent, DuVall. The parties offered competing expert testimony on this issue.[2] The Court accepted the qualifications of each of the proffered expert witnesses to offer opinion testimony pursuant to the Federal Rules of Evidence.

13. It appears undisputed that there are two fundamental principles of handwriting analysis. First, no two people share the exact same combination of handwriting characteristics, such as beginning and ending strokes, height, slant, spacing, letter forms, and personal flair, etc. Second, no person writes exactly the same way on repetitive occasions. This is referred to as natural variation.

14. Both experts lamented the fact that MetLife did not retain the original beneficiary designation document so that it could be examined and compared. Examination of document copies has limitations and drawbacks, but the copies were sufficiently adequate for each expert to opine.

15. There is a standard terminology for expressing conclusions of forensic document examiners, as established by ASTM International Designation: E 1658. There are nine recommended terms utilized by examiners to express degrees of confidence in writing exemplar

---

[2] The non-expert testimony is also contradictory. Linda Daube and Gerard DuVall testified that in their lay opinion, it was not DuVall's signature. Glenn Camp, the union benefits representative, testified that DuVall asked for forms to change his beneficiary forms and told Camp of his intent to assign all of his benefits to Douglas. Camp met with DuVall on December 20, 2006 to answer questions, but no forms were completed at this meeting. Camp testified that during a phone call in late January, DuVall stated that he had signed all the forms and sent them in to work with Douglas and that he had left everything to her. Douglas testified that DuVall dated and signed all of the forms.

comparison, in declining gradations of opinions: (1) identification (definite conclusion of identity), (2) strong probability (highly/very probable), (3) probable, (4) indications (evidence to suggest/may have written), (5) no conclusion (indeterminable), (6) indications did not, (7) probably did not, (8) strong probability did not, and (9) elimination (definite conclusion did not write). In other words, a forensic document examiner may express varying degrees of confidence that a particular handwriting exemplar either is, or is not, the writing of a specific individual, or may not be able to reach any conclusion at all.

16. Traci Moran opined on behalf of Douglas that there is evidence to indicate or suggest that DuVall may have personally signed the January 11 Designation, but the evidence is not conclusive. She found that a limited number of features of the questioned and known signatures of DuVall were in agreement: the overall slant of the signature, the spacing between the first name, middle initial and last name, the variation in terminal stroke of the "D", the shape and proportion of the "ll", and the relative skill of the writer. This opinion of Moran corresponds to the fourth level of the ASTM scale, i.e., indications (evidence to suggest/may have written), and on cross-examination, Moran conceded that this is the lowest level of positive opinion and as the ASTM scale indicates, this is a "very weak" opinion.

17. Michelle Dresbold opined on behalf of the DuVall children that within a reasonable degree of professional certainty, DuVall did not author the signature on the January 11 Designation. Dresbold clarified that this opinion corresponded to the eighth level on the ASTM scale, which concludes a strong probability that DuVall did not personally sign the form.

18. The Court finds that the analysis of Ms. Dresbold is persuasive. She points to four specific characteristics of the signature on the January 11 Designation that are not consistent or otherwise dissimilar with the other 29 known signature exemplars of DuVall that she examined. First, the capital "Ds" in the questioned signature end in an upstroke, or type of checkmark,

7

which is indicative of an additional upward hand movement. While there is some variety in form, all of DuVall's authenticated signatures end the capital "Ds" on a consistent downstroke.[3] Second, the capital "V" in the questioned signature is out of proportion as the tallest letter, which is never replicated in the known signatures. In the known signatures, the "V" is almost always smaller than both the "D" in DuVall and the ending "lls". Third, there is a significant space between the capital "D" and the "u" in the questioned signature. In the known signatures, the "u" is typically hardly legible and appears to be a decimal point, always located in very close proximity to the capital "D." Lastly, the middle initial "D" in the questioned signature is very skinny, or narrow, in comparison with all the known exemplars. The Court has personally confirmed the observations of Dresbold through its own close examination of the questioned and known signatures.

19. Based on the testimony of the experts (Moran - somewhat equivocal/may have written and Dresbold - persuasive/strong probability did not write), and Linda Daube, the Court finds that DuVall did not personally author the signature on the January 11 Designation.

20. Accordingly, the January 11 Designation is not effective and the June 6, 2006 Beneficiary Designation, which names the DuVall children as primary beneficiaries, remains in full force and effect.

---

[3] When challenged to counter this conclusion during cross-examination, Moran pointed to the pre-retirement election form and to check numbers 1207 and 1214. The pre-retirement election form does not qualify as a "known" signature of DuVall because it was completed at the same time and under the same circumstances as the January 11 Designation. The checks do not support Moran's position because #1214 appears to end on a downstroke and it appears that the apparent checkmark in #1207 is instead part of a series of regularly-spaced background splotches having resulted from the poor copying quality.

Conclusions of Law

1. This Court has subject-matter jurisdiction because the matter relates to an employee benefit plan governed by ERISA. Venue is proper in this Court.

2. MetLife properly interpleaded the proceeds of DuVall's employer-sponsored group life insurance policy pursuant to Fed. R. Civ. P. 22. Pursuant to the terms of the Court's Order dated January 30, 2008, MetLife is discharged from all further liability arising as a result of the death of DuVall and is dismissed with prejudice from this litigation.

3. In an Order dated July 10, 2008 to resolve the parties' dispute as to who would present evidence first, the Court stated that the burden of proof rests with Douglas to establish the bona fides of the January 11 Designation and to show that it was in substantial compliance with MetLife's requirements. Douglas contends that the burden is on the party asserting forgery to prove the forgery by clear and convincing evidence. The Court reasoned that because the January 11 Designation had been rejected by MetLife, the burden did not shift to the DuVall children to disprove the validity of the form. Thus, *Jackson v. Allstate Ins. Co.*, 441 F. Supp.2d 728 (W.D. Pa. 2006), is distinguishable.

4. In light of the Court's factual findings, it need not resolve the novel legal issue(s) relating to burden of proof. Under either standard, the Court would rule that the January 11 Designation is ineffective.

5. In light of the Court's factual findings, it need not reach the legal issue of whether the January 11 Designation was in "substantial compliance" with MetLife's requirements, despite the lack of a signature on the second page. The finding of the Court that DuVall did not personally author the signature on the January 11 Designation necessitates the conclusion that the form is null, void and ineffective.

6. The Beneficiary Designation form dated June 6, 2006 is valid and is the effective

instrument for distribution of the life insurance proceeds at issue.

7. After the time for appeal has expired and provided no appeal has been filed, in accordance with Fed. R. Civ. P. 67 and Title 28 U.S.C. §§ 2041 and 2042, the clerk shall disburse the interpleaded funds, plus accrued interest, as directed in the June 6, 2006 Beneficiary Designation, as follows. Primary beneficiaries: (Gerard DuVall, son - 34%, David DuVall, son - 33%, and Amanda DuVall, daughter - 33%); Contingent beneficiaries: (Ralph DuVall, brother - 50%, and Sarah DuVall, mother - 50%).

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, | ) ) | |
| Plaintiff, | ) | 2:07-cv-1503 |
| v. | ) ) | |
| MARY LYNN DOUGLAS, GERARD DUVALL, DAVID DUVALL and AMANDA DUVALL, | ) ) ) | |
| Defendants. | ) | |

## ORDER OF COURT

AND NOW this 29th day of July, 2008, in accordance with and based upon the foregoing Findings of Fact and Conclusions of Law, it is ORDERED, ADJUDGED and DECREED that on or about September 2, 2008, provided that no Notice of Appeal has been filed in this action, the district clerk shall disburse all of the interpleaded funds in this action plus accrued interest on deposit at PNC Bank, less a percentage of all interest earned payable to the district clerk as a handling fee as set by the Judicial Conference. Said net funds shall be paid in accordance with a Met Life Beneficiary Designation of James D. DuVall dated June 6, 2006 to the following primary beneficiaries:

    Gerald J. DuVall, son - 34%;

    David J. DuVall, son - 33%; and

    Amanda M. DuVall, daughter - 33%.

The disbursements may be made to said beneficiaries in care of their attorney, Kristopher J. Weigand, Esq., 235 Humphrey Road, Building 2, Suite 3, Greensburg, Pennsylvania 15601. Upon disbursement, the clerk shall docket this case closed.

                                                          BY THE COURT:

                                                          s/ Terrence F. McVerry
                                                          United States District Court Judge

cc: Jason Mettley, Esquire
Email: jm@jpilaw.com

Kristopher J. Wiegand, Esquire
Email: kwiegand@hotmail.com

Finance Department,
District Court Clerk

William James Rogers, Esquire
Email: wjr@trc-law.com